NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3414
_____

ANDREW MATTERN;
AMANDA MATTERN,
Appellants

v.

CITY OF SEA ISLE; POWELL BIRCHMEIER & POWELL; JAMES R.
BIRCHMEIER, ESQ.; LIEUTENANT ANTHONY GARREFFI; PATROLMAN
NICHOLAS GIORDANO; DETECTIVE BRIAN HAMILTON; PATROLMAN
SHAWN LESNIEWSKI; DETECTIVE SERGEANT WILLIAM MAMMELE;
LIEUTENANT THOMAS MCQUILLEN; JOHN DOES 1-10; ABC, INC, 1-10
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-14-cv-07231)
District Judge:  Honorable Jerome B. Simandle
_____

Submitted under Third Circuit LAR 34.1(a)
April 12, 2016

Before:  AMBRO, SMITH, and KRAUSE, *Circuit Judges*

(Opinion filed: August 24, 2016)

OPINION*

_____

  * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Andrew and Amanda Mattern appeal the District Court's dismissal of their Fourteenth Amendment due process claims, brought pursuant to 42 U.S.C. § 1983, against the City of Sea Isle, New Jersey, and several officers with the City of Sea Isle Police Department. For the reasons that follow, we will affirm.

## I. Background[1]

Appellant Andrew Mattern was hired by the City of Sea Isle to help clean up debris that accumulated along the city's promenade following Hurricane Sandy. While driving a large truck in reverse along the promenade at about one or two miles per hour, Mr. Mattern accidentally struck a pedestrian, Bernice Pasquarello, who had emerged onto the promenade from a nearby path. She was pronounced dead at the scene. Ms. Pasquarello was unable to see the reversing truck as a result of large bushes flanking each side of the access point, which likewise prevented Mr. Mattern from seeing Ms. Pasquarello. Moreover, Ms. Pasquarello was unable to hear the truck over the combination of her earmuffs and the twenty-five mile per hour wind gusts coming off the shore at that time. A post-accident investigation also revealed that the reverse beeper on Mr. Mattern's truck was not working on the day of the accident.

---

[1] Because we write primarily for the parties, we will recite only as much of the factual and procedural history of this case as is helpful to our discussion. Because this case is an appeal from dismissal under Fed. R. Civ. P. 12(b)(6), we accept the allegations in the complaint as true and draw all reasonable inferences therefrom in the light most favorable to the Matterns, the non-moving parties. *See Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir. 1987). Accordingly, the following facts are taken from the Matterns' Amended Complaint and its supporting documents.

After the accident, several police officers from the City of Sea Isle arrived on the scene. The first, Patrolman Nicholas Giordano, observed that while it appeared Mr. Mattern was "not impaired," he was "visibly emotional and shaken up about what occurred." J.A. 112, 168. Officer Giordano directed Mr. Mattern to wait on a bench about twenty-five feet from Ms. Pasquarello's body until another officer, Detective Sergeant William Mammele, arrived.

Upon arrival, Detective Sergeant Mammele similarly observed that Mr. Mattern was "visibly shaken and very upset" and noted that when he asked Mr. Mattern if he was "okay," Mr. Mattern responded, "No, I just killed someone." J.A. 113, 170. Mammele asked Mr. Mattern to "tell him what happened," and Mr. Mattern recounted the accident's events in detail. J.A. 170. In his report, Mammele noted that he detected "no sign of physical impairment nor any odor of alcoholic beverage." J.A. 170.

While the police secured the scene, Mr. Mattern was placed in a police car by Lieutenant Anthony Garreffi. Eventually, Mr. Mattern was joined by Amanda Mattern, his wife, and Officer Giordano drove the two to a makeshift police station for investigation. Officer Giordano sat with Mr. Mattern for about an hour in silence until the arrival of Lieutenant Thomas McQuillen, who noticed that Mr. Mattern was "visibly upset and appeared to have been crying." J.A. 176.

While waiting for other investigators to arrive, Lieutenant McQuillen and the Matterns "ma[d]e small talk." J.A. 177. During that time, Mr. Mattern stated repeatedly that he "was just driving the truck" and "had no idea where [Ms. Pasquarello] came

3

from." J.A. 115. After several hours at the makeshift station, the Matterns retained an attorney who instructed them to leave. Before the Matterns left, however, Deacon Joseph Murphy, a minister who was at the station to speak with police officers and assess their need for "grief counseling," asked whether "he was needed to speak to Mr. Mattern," but "this request was rejected by the police off-hand, and Deacon Murphy was transported to the Pasquarello's residence." J.A. 118.

The Matterns allege that, as a result of the accident and the "delay in medical attention," Mr. Mattern "suffers from post traumatic stress disorder" for which he "receives regular therapy" and that his "mental trauma will be explained in detail by [an] expert medical witness." J.A. 102-03, 116-17. The Matterns further allege that Mr. Mattern was in "a state of mind which was visibly abnormal to everyone he encountered" and that he was "suffering from a mental trauma for which he was actively denied assistance." J.A. 114.

Following these events, the Matterns brought an action pursuant to 42 U.S.C. § 1983 against Garreffi, Giordano, Mammele, and McQuillen (collectively, the "Named Officers") and a *Monell* claim[2] against the City of Sea Isle claiming violations of Mr. Mattern's Fourteenth Amendment rights.[3] The District Court dismissed both claims set

---

[2] Section 1983 permits claims against a municipality that has adopted a policy, custom, or practice that caused a violation of a claimant's constitutional rights. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).

[3] The Matterns agree that where, as here, medical attention is denied to a person during pre-incarceration detainment, it is the Fourteenth Amendment that is implicated. However, the Matterns' brief also references the Fourth and Eighth Amendments. As a

4

out in the Matterns' Amended Complaint (the "Complaint") pursuant to Rule 12(b)(6), and this appeal followed.

## II.    Jurisdiction and Standard of Review

We have jurisdiction over appeals from all final decisions of the district courts pursuant to 28 U.S.C. § 1291. We review de novo a district court's dismissal under Fed. R. Civ. P. 12(b)(6). *Merle v. United States,* 351 F.3d 92, 94 (3d Cir. 2003). Rule 12(b)(6) instructs that a complaint must be dismissed if, after accepting as true all of the well-pleaded facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, the complaint fails to show that the plaintiff has a plausible claim for relief. *See, e.g., Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 152 n.2 (3d Cir. 2015). Although a complaint need not contain "detailed factual allegations," a proper articulation of the plaintiff's grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). We will affirm only if no relief

---

preliminary matter, we note that the Fourth Amendment is not implicated by denial of medical care claims. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (discussing the Eighth and Fourteenth Amendments in the context of a denial of medical care claim). Moreover, as the District Court noted, Mr. Mattern's Eighth Amendment rights are not implicated because Mr. Mattern was not a convicted prisoner at the time of the conduct at issue in this case. *Id.* (noting the Eighth Amendment applies only "after [the State] has secured a formal adjudication of guilt in accordance with due process of law" (alteration in original) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983))). For these reasons, the following discussion relates only to Mr. Mattern's Fourteenth Amendment rights.

could be granted under any set of facts the plaintiff could prove. *Evancho v. Fisher,* 423 F.3d 347, 351 (3d Cir. 2005).

## III. <u>Discussion</u>

The Matterns argue on appeal that the Named Officers violated Mr. Mattern's Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 by denying him medical attention for his psychological trauma in the aftermath of the accident. The Matterns further argue that the City of Sea Isle is liable pursuant to *Monell* for this constitutional violation because it failed to properly train its officers and first responders to provide psychological medical attention to those that cause such accidents. We address each claim in turn.

### A. § 1983 Claims Against the Named Officers

To state a claim under 42 U.S.C. § 1983, the Matterns must show: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived [Mr. Mattern] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith,* 653 F.3d 313, 319 (3d Cir. 2011).[4] "The first step in evaluating a § 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini v. Morra,* 212

_____

[4] The Named Officers do not dispute that they were acting under color of state law, nor would the law support such an argument. *See, e.g., Black v. Stephens*, 662 F.2d 181, 188 (3d Cir. 1981). Therefore, the only question on appeal is whether the Named Officers violated Mr. Mattern's constitutional rights.

F.3d 798, 806 (3d Cir. 2000) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

In this case, the particular right at issue is Mr. Mattern's right to medical care for psychological and emotional trauma. In assessing a pretrial detainee's claim that he was denied medical care, the relevant inquiry is whether the alleged denial was "imposed for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose." *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). For a denial of medical care to constitute a violation of the Fourteenth Amendment, the Matterns must demonstrate: "(i) a serious medical need, and (ii) acts or omissions by [the Named Officers] that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999)).[5] Notwithstanding our sympathy for all affected by this tragic accident, we agree with the District Court that

---

[5] While the Eighth Amendment itself "has no application" until there has been a "formal adjudication of guilt," *City of Revere*, 463 U.S. at 244, we evaluate these claims "under the standard used to evaluate similar claims brought under the Eighth Amendment," *Natale*, 318 F.3d at 582; *see also City of Revere*, 463 U.S. at 244 (stating that the Fourteenth Amendment provides pretrial detainees with protections "at least as great as the Eighth Amendment protections available to a convicted prisoner"). There is an open question of "how much more protection unconvicted prisoners should receive" under the Fourteenth Amendment. *Kost v. Kozakiewicz,* 1 F.3d 176, 188 n.10 (3d Cir. 1993). Because the Matterns have not raised this issue on appeal, "we do not decide whether the Due Process Clause provides additional protections to pretrial detainees beyond those provided by the Eighth Amendment to convicted prisoners." *Natale*, 318 F.3d at 581 n.5.

the facts as alleged in the Matterns' Complaint fail to establish either prong required for a Fourteenth Amendment denial of medical care claim.

### 1. Serious Medical Need

First, and with regard to prong one, a medical need is "serious" for purposes of a denial of medical care claim if it is either "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 960 (3d Cir. 1981)).[6]

As the District Court noted, the Complaint does not explicitly allege that Mr. Mattern was diagnosed with Post-Traumatic Stress Disorder ("PTSD") by a medical professional. It does allege, however, that Mr. Mattern "suffers from post traumatic stress disorder" for which he "receives regular therapy" and that his "mental trauma will be explained in detail by [the Matterns'] expert medical witness." J.A. 102-03, 117. Viewed in a light most favorable to the Matterns and drawing all reasonable inferences therefrom, these allegations raise a reasonable inference that Mr. Mattern has been diagnosed with PTSD.

---

[6] We emphasize that a "serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 328 n.13 (3d Cir. 2014) (quoting *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1187 (5th Cir. 1986)), *rev'd on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

However, "[t]he ability to satisfy [this] prong with a showing that the injury was diagnosed by a physician who mandated treatment necessarily contemplates the diagnosis being made *before* the defendant's alleged deliberate indifference." *Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013).[7]  For this reason, the post hoc diagnosis described in the Complaint is insufficient to establish that Mr. Mattern had a serious medical need that could form the basis of a Fourteenth Amendment denial of medical care claim.

Nor do the facts as alleged in the Complaint establish the second type of serious medical need—one that is "so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Lanzaro*, 834 F.2d at 347.  A conclusion that certain facts would not make a serious medical need obvious to a lay person is not a conclusion that no such need exists; "[h]eart disease and HIV, unlike, for example, broken legs or bullet wounds, do not clearly manifest themselves in ways that are obvious and ascertainable to a lay person." *Montgomery v. Pinchak*, 294 F.3d 492, 494 (3d Cir. 2002).  In this case, although Mr. Mattern's being "visibly shaken" and "emotional," "crying," and responding "no" when an officer asked if he was "okay" would indicate to a lay person that he was distraught as a result of the accident, J.A. 170, 176, these facts do not demonstrate a medical need "so obvious" that a lay person would "easily recognize the necessity for a doctor's attention," *Lanzaro*, 834 F.2d at 347.  Mr.

---

[7] As the Sixth Circuit noted, "if a post hoc diagnosis of the . . . injuries would suffice" to establish a serious medical need, there would be "no need" for the second method of establishing such a need, i.e., demonstrating that "an injury was obvious to a lay person." *Burger*, 735 F.3d at 477.

9

Mattern's ability to make "small talk" with Detective Sergeant Mammele and recount the accident in detail further supports this conclusion. *See, e.g., Grayson v. Ross*, 454 F.3d 802, 809 (8th Cir. 2006) (concluding a medical need resulting from substance abuse was not obvious where the claimant "became combative" while being arrested but subsequently sat "calmly in the back of the patrol car, followed directions, answered questions posed, and remained quiet and seated on a bench inside the jail").

The Matterns argue that Deacon Murphy's presence for the purpose of providing grief counseling to officers who observed the deadly accident demonstrates that police realize that individuals involved in such accidents require medical attention and thus the need is obvious. We cannot agree. Whatever support a general policy of having a doctor available might lend to a plaintiff's burden to demonstrate an obvious medical need in his specific case, there was no such policy here. While Deacon Murphy's presence may indicate that the police understand the value of a spiritual counselor in the aftermath of an accident, it does not reflect an understanding of the "necessity for a *doctor's* attention" after such accidents, and thus this argument is also insufficient to show that Mr. Mattern had an "obvious" need for medical attention. *Lanzaro*, 834 F.2d at 347 (emphasis added).

### 2.     Deliberate Indifference

Even assuming that the facts alleged in the Complaint did show that Mr. Mattern was suffering from a "serious medical need," the Matterns could not satisfy the second requirement of their claim—that the Named Officers acted with "deliberate indifference."

10

*Natale*, 318 F.3d at 582. For claims evaluated pursuant to Eighth Amendment standards, deliberate indifference is a "subjective standard of liability" and thus a defendant cannot be held liable unless he or she "knows of and disregards an excessive risk to [a complainant's] health or safety." *Id.* (quoting *Nicini*, 212 F.3d at 811; then quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). We have explained that deliberate indifference is "evident" in certain circumstances, including: (i) the denial of reasonable requests for medical treatment that expose the complainant to undue suffering; (ii) knowledge of the need for medical care and the intentional refusal to provide such care; or (iii) the delay of necessary medical treatment for non-medical reasons. *See Lanzaro,* 834 F.2d at 346-47.

The Matterns invoke the second category of deliberate indifference under *Lanzaro*: They argue that Mr. Mattern's statement that he was "not ok," together with the various officers' observations of Mr. Mattern, "illustrates that the officials were told there was a need for medical attention and refused to acknowledge" it. Appellants' Br. 24. As noted above, however, the Complaint and its supporting documents reflect merely that the Named Officers noticed that Mr. Mattern was distraught, and, moreover, that they were able to converse with him and believed he was not impaired. These observations simply do not demonstrate knowledge of a need for medical care. *See Natale*, 318 F.3d at 582. Thus, even viewed in the light most favorable to the Matterns, the allegations in the Complaint do not rise to the "stringent standard" of deliberate indifference. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

11

**B.** **§ 1983 Claims Against the City of Sea Isle**

Because, as explained above, we conclude that the Matterns have not sufficiently pleaded a Fourteenth Amendment denial of medical care claim, the Matterns' *Monell* claim against the City of Sea Isle must also fail. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (stating if a municipal employee "inflicted no constitutional injury . . . it is inconceivable that [the municipality] could be liable"). Accordingly, we will affirm the District Court's dismissal of this claim.

## IV. <u>Conclusion</u>

For the foregoing reasons, we will affirm the order of the District Court.