# SUPREME COURT OF THE UNITED STATES

STANLEY TAYLOR, ET AL. *v.* KAREN BARKES, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 14–939.  Decided June 1, 2015

PER CURIAM.

Christopher Barkes, "a troubled man with a long history of mental health and substance abuse problems," was arrested on November 13, 2004, for violating his probation. *Barkes* v. *First Correctional Medical, Inc.*, 766 F. 3d 307, 310–311 (CA3 2014).  Barkes was taken to the Howard R. Young Correctional Institution in Wilmington, Delaware.  As part of Barkes's intake, a nurse who worked for the contractor providing healthcare at the Institution conducted a medical evaluation. *Id.*, at 311.

The evaluation included a mental health screening designed in part to assess whether an inmate was suicidal. The nurse employed a suicide screening form based on a model form developed by the National Commission on Correctional Health Care (NCCHC) in 1997.  The form listed 17 suicide risk factors.  If the inmate's responses and nurse's observations indicated that at least eight were present, or if certain serious risk factors were present, the nurse would notify a physician and initiate suicide prevention measures. *Id.*, at 311, 313.

Barkes disclosed that he had a history of psychiatric treatment and was on medication.  He also disclosed that he had attempted suicide in 2003, though not—as far as the record indicates—that he had also done so on three other occasions.  And he indicated that he was not currently thinking about killing himself.  Because only two risk factors were apparent, the nurse gave Barkes a "routine" referral to mental health services and did not initiate any special suicide prevention measures. *Id.*, at 311.

Barkes was placed in a cell by himself. Despite what he had told the nurse, that evening he called his wife and told her that he "can't live this way anymore" and was going to kill himself. Barkes's wife did not inform anyone at the Institution of this call. The next morning, correctional officers observed Barkes awake and behaving normally at 10:45, 10:50, and 11:00 a.m. At 11:35 a.m., however, an officer arrived to deliver lunch and discovered that Barkes had hanged himself with a sheet. *Id.*, at 311–312.

Barkes's wife and children, respondents here, brought suit under Rev. Stat. §1979, 42 U. S. C. §1983, against various entities and individuals connected with the Institution, who they claimed had violated Barkes's civil rights in failing to prevent his suicide. At issue here is a claim against petitioners Stanley Taylor, Commissioner of the Delaware Department of Correction (DOC), and Raphael Williams, the Institution's warden. Although it is undisputed that neither petitioner had personally interacted with Barkes or knew of his condition before his death, respondents alleged that Taylor and Williams had violated Barkes's constitutional right to be free from cruel and unusual punishment. *Barkes* v. *First Correctional Medical, Inc.*, 2008 WL 523216, \*7 (D Del., Feb. 27, 2008). They did so, according to respondents, by failing to supervise and monitor the private contractor that provided the medical treatment—including the intake screening—at the Institution. Petitioners moved for summary judgment on the ground that they were entitled to qualified immunity, but the District Court denied the motion. *Barkes* v. *First Correctional Medical, Inc.*, 2012 WL 2914915, \*8–\*12 (D Del., July 17, 2012).

A divided panel of the Court of Appeals for the Third Circuit affirmed. The majority first determined that respondents had alleged a cognizable theory of supervisory liability (a decision upon which we express no view). 766 F. 3d, at 316–325. The majority then turned to the two-

step qualified immunity inquiry, asking "first, whether the plaintiff suffered a deprivation of a constitutional or statutory right; and second, if so, whether that right was 'clearly established' at the time of the alleged misconduct." *Id.*, at 326.

Taking these questions in reverse order, the Third Circuit held that it was clearly established at the time of Barkes's death that an incarcerated individual had an Eighth Amendment "right to the proper implementation of adequate suicide prevention protocols." *Id.*, at 327. The panel majority then concluded there were material factual disputes about whether petitioners had violated this right by failing to adequately supervise the contractor providing medical services at the prison. There was evidence, the majority noted, that the medical contractor's suicide screening process did not comply with NCCHC's latest standards, as required by the contract. Those standards allegedly called for a revised screening form and for screening by a qualified mental health professional, not a nurse. There was also evidence that the contractor did not have access to Barkes's probation records (which would have shed light on his mental health history), and that the contractor had been short-staffing to increase profits. *Id.*, at 330–331.

Judge Hardiman dissented. As relevant here, he concluded that petitioners were entitled to qualified immunity because the right on which the majority relied was "a departure from Eighth Amendment case law that had never been established before today." *Id.*, at 345.

Taylor and Williams petitioned for certiorari. We grant the petition and reverse on the ground that there was no violation of clearly established law.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle* v. *Howards*,

566 U. S. ___, ___ (2012) (slip op., at 5). "To be clearly
established, a right must be sufficiently clear that every
reasonable official would have understood that what he is
doing violates that right." *Ibid.* (brackets and internal
quotation marks omitted). "When properly applied, [quali-
fied immunity] protects all but the plainly incompetent or
those who knowingly violate the law." *Ashcroft* v. *al-Kidd*,
563 U. S. ___, ___ (2011) (slip op., at 12) (internal quota-
tion marks omitted). "We do not require a case directly on
point, but existing precedent must have placed the statu-
tory or constitutional question beyond debate." *Id.*, at ___
(slip op., at 9).

The Third Circuit concluded that the right at issue was
best defined as "an incarcerated person's right to the
proper implementation of adequate suicide prevention
protocols." 766 F. 3d, at 327. This purported right, how-
ever, was not clearly established in November 2004 in a
way that placed beyond debate the unconstitutionality of
the Institution's procedures, as implemented by the medi-
cal contractor.

No decision of this Court establishes a right to the
proper implementation of adequate suicide prevention pro-
tocols. No decision of this Court even discusses suicide
screening or prevention protocols. And "to the extent that
a 'robust consensus of cases of persuasive authority'" in
the Courts of Appeals "could itself clearly establish the
federal right respondent alleges," *City and County of San
Francisco* v. *Sheehan*, 575 U. S. ___, ___ (2015) (slip op., at
16), the weight of that authority at the time of Barkes's
death suggested that such a right did *not* exist. See, *e.g.*,
*Comstock* v. *McCrary*, 273 F. 3d 693, 702 (CA6 2001) ("the
right to medical care for serious medical needs does not
encompass the right to be screened correctly for suicidal
tendencies" (internal quotation marks omitted)); *Tittle* v.
*Jefferson Cty. Comm'n*, 10 F. 3d 1535, 1540 (CA11 1994)
(alleged "weaknesses in the [suicide] screening process,

the training of deputies[,] and the supervision of prisoners" did not "amount to a showing of deliberate indifference toward the rights of prisoners"); *Burns* v. *Galveston*, 905 F. 2d 100, 104 (CA5 1990) (rejecting the proposition that "the right of detainees to adequate medical care includes an absolute right to psychological screening"); *Belcher* v. *Oliver*, 898 F. 2d 32, 34–35 (CA4 1990) ("The general right of pretrial detainees to receive basic medical care does not place upon jail officials the responsibility to screen every detainee for suicidal tendencies.").

The Third Circuit nonetheless found this right clearly established by two of its own decisions, both stemming from the same case. Assuming for the sake of argument that a right can be "clearly established" by circuit precedent despite disagreement in the courts of appeals, neither of the Third Circuit decisions relied upon clearly established the right at issue. The first, *Colburn I*, said that if officials "know or should know of the particular vulnerability to suicide of an inmate," they have an obligation "not to act with reckless indifference to that vulnerability." *Colburn* v. *Upper Darby Twp.*, 838 F. 2d 663, 669 (1988). The decision did not say, however, that detention facilities must implement procedures to identify such vulnerable inmates, let alone specify what procedures would suffice. And the Third Circuit later acknowledged that *Colburn I*'s use of the phrase "or should know"—which might seem to nod toward a screening requirement of some kind—was erroneous in light of *Farmer* v. *Brennan*, 511 U. S. 825 (1994), which held that Eighth Amendment liability requires actual awareness of risk. See *Serafin* v. *Johnstown*, 53 Fed. Appx. 211, 213 (CA3 2002).

Nor would *Colburn II* have put petitioners on notice of any possible constitutional violation. *Colburn II* reiterated that officials who know of an inmate's particular vulnerability to suicide must not be recklessly indifferent to that vulnerability. *Colburn* v. *Upper Darby Twp.*, 946

F. 2d 1017, 1023 (1991). But it did not identify any minimum screening procedures or prevention protocols that facilities must use. In fact, *Colburn II* revealed that the booking process of the jail at issue "include[d] no formal physical or mental health screening," *ibid.*, and yet the Third Circuit ruled for the defendants on all claims, see *id.*, at 1025–1031.

In short, even if the Institution's suicide screening and prevention measures contained the shortcomings that respondents allege, no precedent on the books in November 2004 would have made clear to petitioners that they were overseeing a system that violated the Constitution. Because, at the very least, petitioners were not contravening clearly established law, they are entitled to qualified immunity. The judgment of the Third Circuit is reversed.

*It is so ordered.*