JONES, Circuit Judge,
dissenting:
I agree with the majority that even after Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), Anderson has plausibly alleged a violation of his First Amendment rights. Unfortunately, that is the end of our agreement, because I disagree with the majority’s reasoning to this conclusion and would grant qualified immunity.
A. First Amendment Retaliation
In the course of discussing Anderson’s First Amendment retaliation claim, the majority has made two errors. The first error constitutes dicta that need not be followed hereafter: the majority irrelevantly invoke the Restatement of Agency and state law of agency to “explain” the scope of a public employee’s official duties. The second error is in the implication that any “whistleblower” speech by a public employee, even when made pursuant to his official duties, takes the employee’s retaliation claim out of Garcetti’s threshold inquiry. After explaining these mistakes, I write why, under a proper Garcetti analysis, Anderson has stated a claim for relief.
One paragraph of the majority opinion begins by stating, “In some circumstances, state law is relevant insofar as it describes the plaintiffs position, including his duties and the way he is hired, supervised, and fired.” (The majority reinforce this idea in a lengthy footnote citing agency and contract law hornbooks.) Garcetti, to the contrary, describes the inquiry defining the scope of an employee’s duties as “a practical one,” such that formal job descriptions will not suffice to insulate employers. 547 U.S. at 424-25, 126 S.Ct. at 1961-62. It stands to reason that reference to treatises untethered to a particular public employee’s workplace will also yield little insight. In any event, the majority cites these references but does absolutely nothing with them in further analysis of Anderson’s duties. These are dicta, pure and simple.
Much more helpful than treatises in illuminating the practical scope of Garcetti are our court’s decisions that evaluated whether employees’ official duties comprehended the speech for which they claimed First Amendment protection. Thus, in Williams v. Dallas Independent School District, 480 F.3d 689 (5th Cir. 2007), this court concluded that a high school athletic director’s communications to the principal expressing concern about the use of funds appropriated for athletic activities were made “in the course of performing” his job duties sufficiently to preclude First Amendment protection. See id. at 693-94. In Davis v. McKinney, 518 F.3d 304 (5th Cir. 2008), the question was whether any of several complaints made by a former auditor of a state university “up the chain of command” and to the FBI and EEOC about internal audit problems, staffing issues and potential racial discrimination were “in the course of performing” the auditor’s job duties. See id. at 312-16. The focus was on the relation between the job duties and the speech, not on whether (as the majority states here) “the employer had an interest in controlling” the speech, or on an auditor’s professional ethics, or alleged whistleblower status. Davis ultimately found some of the communications protected by the First Amendment, while others were not. Id. at 315-16. See also Nixon v. City of Hous., 511 F.3d 494, 498 (5th Cir. 2007) (holding that a police officer’s volunteered media statement critical of the Houston Police Department’s high-speed chase policy nevertheless was made “pursuant to his official duties and during the course of performing his job.”).
*604 The majority’s second implication, that any “whistleblower”-type speech is constitutionally protected, is not benign. The majority asserts-that an employee “is not speaking pursuant to his official duties” and therefore gains First Amendment protection whenever he exposes unlawful, inappropriate or inefficient government conduct. Purporting to draw support from Garcetti for this point, the majority refer to the Supreme Court’s penultimate paragraphs, which begin by stating, “Exposing governmental inefficiency and misconduct is a matter of considerable significance.” 547 U.S. at 425, 126 S.Ct. at 1962. The majority misconstrue the Court’s discussion — which merely enumerates various limitations on public officials and concomitant protections of public employees — as an invitation to lower courts to distinguish “lawful and appropriate” employer control of the employee’s speech from that which is “unlawful and inappropriate.” This is not what the Court says. The Court finishes its discourse by rejecting “the notion that the First Amendment shields from discipline the expressions employees make pursuant to them professional duties. Our precedents do not support the existence of a constitutional cause of action behind every statement a public employee makes in the course of doing his or her job.” Id. (emphasis added).
The majority’s gratuitous focus on (a) the nature of the speech and (b) the government employer’s “interest in control” muddle Garcetti’s clear threshold line that holds speech undertaken pursuant to an employee’s job duties is categorically unprotected by the First Amendment. The majority assert generally that it “was lawful and appropriate” for the District Attorney’s office in Garcetti to “control” attorney Ceballos’s speech pursuant to his official duties, but this is semantics. Ce-ballos was reporting about police misconduct, specifically, misrepresentations made in a warrant affidavit; his opinion was overruled by his superiors who continued the criminal prosecution. The Supreme Court explicitly did not rule on the merits of Ceballos’s internal memos and held simply that because they were authored pursuant to his official duties, they receive no First Amendment protection. Yet, under the majority’s misplaced analysis, Ce-ballos’s memos might just as easily be characterized as those of a “whistleblower” exposing both police and prosecutorial misconduct. The majority, therefore, have smuggled back into Garcetti’s threshold issue of job duties an evaluation of the speech itself based on the employer’s “interest in controlling” the employee speech, or whistleblower revelations.
Despite my disagreement with the majority’s reasoning, I concur that Anderson stated a claim for First Amendment retaliation. The fact that his boss, Justice Vela, conveyed the incriminating information to Anderson means that the speech “related” to his job duties, but Anderson pleads that he did not write the letters under her supervision or on her orders or even with her knowledge.[1] Cf. Lane v. Franks, — U.S. -, 134 S.Ct. 2369, 2379, 189 L.Ed.2d 312 (2014) (First Amendment retaliation claim could proceed under Garcet-ti where employee’s testimony in criminal court related to and “concern[ed] information learned in the course of’ his employment duties, but the speech itself, rather than falling within those duties, was an *605 obligation of every citizen). A careful analysis of Anderson’s job duties indicates that his complaints about Chief Justice Valdez were not made “pursuant to his duties” or “in the course of performing” his work as a briefing attorney to Justice Vela.
A judge’s briefing attorney is paid by the court but is normally accountable to the judge (or judges) for whom he directly works. The relation between a judge and a law clerk is both sensitive and confidential. Further, the scope of the clerk’s duties for “his” judge varies widely within the judiciary, in part because a judge takes advantage of each briefing attorney’s particular experience and expertise. It is hardly unusual for a briefing clerk’s duties to range beyond writing legal memoranda, conducting research on pending cases, and advising on motions before the court. Anderson accordingly became responsible for advising Justice Vela when she inquired of him about the legality of the chief justice’s travel reimbursements. Based on their confidential relationship, Anderson would also have had the duty to inform Justice Vela if he had independently discovered possible malfeasance within the judiciary. Justice Vela in either case shouldered a duty to pursue the allegations, but Anderson’s official work ended with rendering his confidential advice to Justice Vela; the justice asked no more of him. Reporting “up the chain” to Chief Justice Jefferson and the State Commission on Judicial Conduct fell outside Anderson’s employment duties.[2]
For these reasons, it is consistent with Garcetti, Williams, and Davis to conclude that, under the facts pled, Anderson was not employed to investigate and report judicial malfeasance beyond his response to Justice Vela’s inquiry. Further, his complaints “up the chain” reflect protected speech as a citizen on a matter of public concern.
B. Qualified Immunity
On the question of qualified immunity, the majority are rightly concerned that a judicial officer should not be able to shield himself from the consequences of actionable retaliation if the law clearly held that a law clerk was speaking “as a citizen” when he reported the alleged judicial misconduct to the chief justice of the Texas Supreme Court and the State Commission on Judicial Conduct. But in this case, as in all qualified immunity cases, the law must have been “clearly established” at the time of the official’s conduct under factually analogous circumstances. See Brosseau v. Haugen, 543 U.S. 194, 198-201, 125 S.Ct. 596, 599-600, 160 L.Ed.2d 583 (2004) (per curiam). Only the “plainly incompetent” public officials or those who “knowingly violate the law” are denied the protection of qualified immunity. Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, *606 3038, 97 L.Ed.2d 523 (1987) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092,1096, 89 L.Ed.2d 271 (1986)).
The majority correctly note that post-Garcetti and before Chief Justice Valdez acted against Anderson, our court’s decisions distinguished between a public employee’s speech within the chain of command of his office (speech that is constitutionally unprotected) and speech “as a citizen,” which is directed outside to third-party responders like the EEOC (and may be constitutionally protected). See, e.g., Davis, 518 F.3d at 315-16 (holding some complaints within the UT System to be unprotected while those to the EEOC were accorded constitutional protection).[3] Based on my view that Anderson’s employment was centered on his duty to “his” judge, Anderson necessarily went outside his “chain of command” when he reported about Chief Justice Valdez on his own to the State Commission on Judicial Conduct. This logic suggests an argument for denying qualified immunity.
Nevertheless, the issue is more complex than the majority’s analysis acknowledges because, under the Texas Constitution, the Commission includes members of the pub-lie,[4] but its proposed sanctions against a judge are ultimately reviewable by the Texas Supreme Court.[5] The Texas judiciary may thus be considered its own self-regulator. In this situation, Chief Justice Valdez’s argument is far from frivolous that Anderson’s complaint went up the “chain of command” within the judiciary. Consequently, the ultimate constitutional status of Anderson’s speech, and thus his right to a First Amendment shield against employment consequences, are debatable. Debatable constitutional violations demand qualified immunity for public officials, even when this court is bound to conclude that a violation in fact occurred. See, e.g., Morgan v. Swanson, 659 F.3d 359, 389-90 (5th Cir. 2011) (en banc) (holding “[t]he defendants in this case are entitled to qualified immunity because existing precedent failed to place the constitutionality of their conduct ‘beyond debate’ ”); Noyola v. Tex. Dep’t of Human Res., 846 F.2d 1021,1026 (5th Cir. 1988) (granting qualified immunity because “neither the ‘contours’ of Noyola’s rights were so clearly outlined nor was the ‘unlawfulness’ of terminating Noyola so ‘apparent’ that Appellants should forfeit their qualified immunity” (quoting Anderson, 483 U.S. at 640,107 S.Ct. at 3039)).
*607 For these reasons, even if Anderson’s allegations are proven to be true, I conclude that Chief Justice Valdez visited unconstitutional retaliation upon Anderson but the law was not “clearly established” such that any “reasonable [judicial] official would understand” that Anderson’s speech was constitutionally protected because it occurred outside the law clerk’s “chain of command.” See Anderson, 483 U.S. at 640, 107 S.Ct. at 8089.
I respectfully dissent.

. Contrary to what both Chief Justice Valdez and the majority assert, Anderson’s professional duties as an attorney neither add to nor detract from this analysis. Arguably such considerations might be relevant under the Pickering balance, but Chief Justice Valdez did not challenge the district court’s application of the Pickering balance and thus we have no occasion or need to address that waived argument.

. Garcetti does not accord any special First Amendment shield to publicly employed professionals by virtue of their ethical codes. Nor, as Chief Justice Valdez suggests, are ethical codes a Garceiiz-fashioned sword. He argues that Anderson is a licensed Texas attorney bound by the Texas Disciplinary Rules of Professional Conduct. See Tex. Loc. Gov't Code § 81.072(d); In re Meador, 968 S.W.2d 346, 350 (Tex. 1998). Chief Justice Valdez contends that it is at least arguable that following the Disciplinary Rules is part of a briefing clerk's official duties. If Anderson was obliged by the Rules, and thus his employment duties, to report on alleged misconduct, then his speech was not entitled to constitutional protection.
The district court aptly summarized its rejection of this argument; "In no way does Garcetti permit an employer to take refuge under the broad net of its employees’ professional ethical obligations that happen to implicate speech on matters of public concern, and that apply to all members of the profession regardless of whether they are publicly employed.”

.I assume arguendo, as the Supreme Court has assumed arguendo, that a right may be clearly established by circuit precedent alone even though Supreme Court precedent has not clearly established the right. See Taylor v. Barkes,-U.S. ——, 135 S.Ct. 2042, 2044-45, 192 L.Ed.2d 78 (2015) (per curiam) (twice noting that "[n]o decision of this Court” was similar to Taylor before "[a]ssuming for the sake of argument that a right can be 'clearly established' by circuit precedent despite disagreement in the courts of appeals”); Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, 2093-94, 182 L.Ed.2d 985 (2012) (noting "[t]his Court has never held that there is such a right ['to be free from a retaliatory arrest that is otherwise supported by probable cause']” before ''[a]ssuming arguendo that controlling Court of Appeals’ authority could be a dispositive source of clearly established law”).

. See Tex. Const, art. V, § l-a(2) (stating that the thirteen-member Commission shall be comprised of; one court of appeals justice; one district judge; two members of the state bar who have practiced law for ten consecutive years; five citizens who are not licensed to practice law not public employees; one justice of the peace; one municipal court judge; one county court at law judge; and one constitutional county court judge).

. See id. art. V, § l-a(9) ("A Justice, Judge, Master, or Magistrate may appeal a decision of the review tribunal ['ordering] public censure, retirement or removal’] to the Supreme Court under the substantial evidence rule.”).