NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3774
_____

MARISSA MARK,
                              Appellant

v.

BRIAN J. PATTON;
DR. ODEIDA DALMASI

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-14-cv-01623)
District Judge: Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 26, 2017

Before: HARDIMAN, ROTH, and FISHER, *Circuit Judges*.

(Filed: June 13, 2017)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Marissa Mark appeals the District Court's order dismissing her complaint alleging that employees of the Federal Detention Center (FDC) in Philadelphia, Pennsylvania failed to provide her with adequate medical care in violation of the Eighth Amendment. We agree with the District Court that Mark did not plausibly allege that the FDC employees acted with deliberate indifference. Accordingly, we will affirm.

I

While incarcerated at the FDC, Mark awoke one morning in November 2011 unable to see out of her left eye. She complained to prison officials and was taken that same day to a local hospital for examination by a general practitioner. That appointment was followed by a visit to a general practitioner at the FDC and a visit to an ophthalmologist four days after Mark first complained of her injury. The ophthalmologist instructed Mark to return for a follow-up appointment in three weeks and to see a neurologist as soon as possible. Mark was taken to a follow-up appointment with a different ophthalmologist six weeks later, and she saw a neurologist at some point after she was transferred to a different detention center in January 2012. The neurologist determined that Mark's vision problems, which persist today, were caused by a virus.

Convinced her medical care was inadequate, Mark sued Brian Patton, Warden and Chief Administrative Officer of the FDC, and Dr. Oldeida Dalmasi, the FDC's clinical director responsible for prisoner health care, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Mark's second amended

complaint alleged that Patton and Dalmasi were directly liable for her injuries by delaying her follow up care with the ophthalmologist and failing to schedule an appointment with a neurologist. Mark also alleged Patton and Dalmasi were liable as supervisors for failing to establish adequate policies and training at the FDC, which enabled a virus to propagate amongst inmates.

The District Court dismissed Mark's complaint because she "failed to allege Defendants acted with the [deliberate indifference]" required for an Eighth Amendment *Bivens* claim. App. 5. Mark appealed, arguing that the District Court misapplied the deliberate indifference standard.

## II[1]

An Eighth Amendment claim for inadequate medical care "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). And "[t]o act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) (citing *Estelle*, 429 U.S. at 104–05). Claims of mere negligence "without some more culpable state of mind,

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1343(a). We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of the District Court's order granting a motion to dismiss. *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 242 (3d Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

do not constitute 'deliberate indifference.'" *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Direct liability claims may succeed whenever a prison official: (1) intentionally refused treatment for a known issue; (2) delayed necessary treatment for non-medical reasons; (3) prevented recommended treatment; or (4) persisted with treatment "in the face of resultant pain." *Id.* (citation omitted).

Mark's allegations regarding the failure of Patton and Dalmasi to schedule a neurological appointment fall short of the aforementioned standards. Mark did not allege that her ophthalmologist alerted Patton or Dalmasi that she needed to see a neurologist. Instead, she claimed only that *she* told them of her need to see a neurologist. Under the facts of this case, the failure to honor immediately Mark's request to see a specialist does not rise to the level of reckless disregard of a substantial risk of serious harm.

This leaves Mark's claim that she was denied adequate medical care because of a three-week delay in receiving a follow-up visit to an ophthalmologist. According to Mark's complaint, her first ophthalmologist notified Dalmasi of Mark's need for a follow-up appointment. Mark did not allege when Dalmasi was so notified, however. Because the complaint failed to allege Dalmasi knew of Mark's need for treatment and delayed it, it did not plausibly allege that Dalmasi acted with deliberate indifference. Even assuming for the sake of argument that Dalmasi knew that Mark needed an appointment, Mark still failed to allege deliberate indifference because she alleged no non-medical reasons for the delay. *See id.* In other words, her complaint is nothing more "than an unadorned, the-defendant-unlawfully-harmed-me accusation," which cannot

4

survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mark's claim that she "requires discovery to determine whether [Defendants] acted with a sufficiently culpable state of mind," Mark Br. 23, is inadequate under controlling law. "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79.

Nor does Mark's supervisory liability theory fare any better. Mark alleged that Defendants failed to adopt policies and procedures which resulted in the propagation of a virus in the prison. But a complaint alleging supervisory liability first "must identify a supervisory policy or practice that the supervisor failed to employ." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015) (per curiam). We are unpersuaded that Mark's sweeping accusations about policies, without identifying one in particular, are sufficient to state a claim. Mark complains that she "was in no position to know of the specific policies or procedures that allowed a neurologically harmful virus to propagate in the prison." Mark Br. 29. In fact, the specific medical policies and procedures followed at the FDC are publicly available on the Federal Bureau of Prisons website.

Even if Mark was not required to identify a specific policy in her complaint, she still failed to state a claim for supervisory liability. To do so, a plaintiff must allege that: "(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and

5

(4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 767 F.3d at 317. Mark did not allege that any policy created an unreasonable risk of a constitutional violation or that either Patton or Dalmasi was aware of such a risk. It follows that Mark's "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," is insufficient to survive the motion to dismiss. *Iqbal*, 556 U.S. at 678.

*     *     *

For the reasons stated, we will affirm the order of the District Court.