**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1924
_____

CHAD J. McCLOSKEY,
                                        Appellant

v.

BUREAU CHIEF JAMES WELCH;
DR. LOUISE DEROSIERS; CORRECT CARE SOLUTIONS
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:14-cv-00030)
District Judge: Honorable Gregory M. Sleet
_____

Submitted for Possible Dismissal Due to a Jurisdictional Defect,
Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B), or
Summary Action Pursuant to Third Circuit L.A.R. 27.4 and I.O.P. 10.6

Before: McKEE, SHWARTZ, and BIBAS, Circuit Judges

(Opinion filed: February 19, 2020)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Pro se appellant Chad McCloskey, an inmate at the James T. Vaughn Correctional Center (JTVCC), appeals the District Court's order granting summary judgment in this civil rights action filed pursuant to 42 U.S.C. § 1983. Because this appeal does not present a substantial question, we will summarily affirm.

In 2014, McCloskey filed a civil rights action against James Welch, the former Chief of the Bureau of Correctional Healthcare Services for the Delaware Department of Corrections (DOC); Correct Care Solutions (CCS), the former medical service care provider for the DOC; and CCS employee and the JTVCC's medical director, Dr. Louise Desrosiers.[1] McCloskey alleged that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, the complaint[2] included claims alleging delay of medical treatment and inadequate medical treatment. The District Court granted each of the defendants' summary judgment motions,[3] and this appeal ensued.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no

---

[1]  Dr. Desrosiers's name was misspelled in the complaint and in the caption throughout this action. We use the correct spelling in this opinion.
[2]  McCloskey twice amended his complaint. The District Court treated the operative complaint as those pleadings filed at District Court Docket Nos. 3, 20, and 58.
[3]  CCS filed cross-claims against its co-defendants for contribution or indemnification, but it voluntarily dismissed those cross-claims. See D.C. Dkt. Nos. 109, 110.

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Kaucher v. County of Bucks, 455 F.3d 418, 422–23 (3d Cir. 2006).

The Eighth Amendment imposes a duty on prison officials to provide medical care to inmates. Estelle v. Gamble, 429 U.S. 97, 103–04 (1976). To establish a violation of this duty, a plaintiff must demonstrate deliberate indifference to a serious medical need. Id. at 106. "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). For instance, a plaintiff may make this showing by establishing that the defendants "intentionally den[ied] or delay[ed] medical care." Id. (quoting Estelle, 429 U.S. at 104–05). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (per curiam) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

The facts underlying McCloskey's complaint were fully set forth by the District Court, so we only briefly recite them here. In 2005, McCloskey fractured his right shoulder in a severe motor vehicle accident. His right humerus was surgically repaired with an intramedullary rod. On June 3, 2013, McCloskey injured that same arm while doing push-up exercises in his prison cell. An x-ray taken on June 14, 2013, showed that he had fractured the intramedullary rod, and that he had a preexisting humeral (nonunion) fracture. McCloskey was seen by an outside orthopedic specialist, Dr. Richard P. DuShuttle, who performed reconstructive surgery on McCloskey on July 29, 2013. McCloskey's claims stem from the

3

eight-week delay between the time of his injury and his surgery, and the allegedly inadequate post-surgery follow-up care, both of which he alleges resulted in substantial harm in violation of his constitutional rights.[4]

McCloskey first alleges that defendant Dr. Desrosiers was deliberately indifferent to his serious medical needs by delaying his medical care.[5] As we have observed, "[a]ll that is needed" to establish a delay of care claim is evidence that the delay "was motivated by non-medical factors." Pearson v. Prison Health Serv., 850 F.3d 526, 537 (3d Cir. 2017). The summary judgment record belies this claim. Within a few hours of the injury, Defendant Desrosiers was contacted by CCS medical personnel who had examined McCloskey and believed that he had pulled a muscle in his arm.[6] Based on the information she was provided, Desrosiers gave a verbal order for ice packs and Tylenol, and she requested to examine McCloskey within a week. Desrosiers examined him three days later, on June 6, 2013. Her notes indicate that she was aware of the prior injury to the shoulder, but unsure as to the extent of the present injury.[7] Contrary to McCloskey's allegations, on that same day, Desrosiers ordered an x-ray and referred McCloskey for a consult with a specialist.

---

[4] We agree with the District Court that McCloskey exhausted his administrative remedies with respect to his claims. See 42 U.S.C. § 1997e(a).

[5] Although the District Court did not directly address it, we are satisfied that there is sufficient evidence to allow a reasonable jury to find that McCloskey had a serious medical need.

[6] In his initial sick call request, McCloskey maintained that his arm was broken and that an x-ray on file would show that he had nerve, muscle, and bone damage from the 2005 injury. Notably, he did not report pain, and the personnel's assessment indicated only that the upper arm was tender.

[7] In her notes, Desrosiers questioned whether the injury could be a strain or partial rupture of the biceps tendon.

McCloskey was x-rayed about a week later on June 14; he had a follow-up appointment with Desrosiers on June 25 to discuss the results. Desrosiers made a second request on that date for an outside consult, with the notation "ASAP please." Once McCloskey was scheduled to be seen by Dr. DuShuttle, Desrosiers faxed his office indicating that McCloskey should be seen earlier. And when a scheduling conflict prevented McCloskey from being seen by DuShuttle on July 9 as scheduled, Desrosiers requested another consult *that same day*. On July 11, McCloskey was seen by DuShuttle who confirmed the fractured intramedullary rod and recommended reconstructive surgery.[8] Desrosiers had a follow-up appointment with McCloskey the next day, the same day that she completed an "Outpatient Referral Request" for surgery with the notation, "please schedule ASAP." Dr. DuShuttle performed surgery on McCloskey on July 29, 2013.

As the foregoing makes clear, and as the District Court concluded, Dr. Desrosiers continually monitored McCloskey from the day of his injury through his discharge from surgery, and "at every turn" she sought to ensure his expeditious care. McCloskey v. Welch, No. 1:14-cv-00030, 2018 WL 1640592, at *5 (D. Del. Apr. 5, 2018). No reasonable jury could find that any delay was attributable to Desrosiers, let alone that it was motivated by non-medical factors.

The record also does not support McCloskey's claim that Dr. Desrosiers provided inadequate medical care in failing to diagnose the injury after the initial examination, failing to prescribe pain medications or a sling prior to his surgery, and failing to provide proper

---

[8]  Dr. DuShuttle noted that McCloskey had an apparent nonunion in 2005 as well as a radial nerve injury and that there were signs of atrophy of his upper arm muscles.

pain management and physical therapy post-surgery. McCloskey did not present any proof that Desrosiers breached a professional standard of care in her treatment of him. See Pearson, 850 F.3d at 536 (noting that to create a triable issue of fact on an inadequate medical care claim, a prisoner must provide extrinsic proof that the medical treatment violated a professional standard of care). There is no circumstantial or extrinsic evidence that every "minimally competent professional" would have diagnosed the injury without benefit of an x-ray or directed McCloskey to wear a sling.[9] Johnson v. Rimmer, 936 F.3d 695, 707 (7th Cir. 2019). And McCloskey refused to follow Desrosiers's initial orders to ice the arm and to take Tylenol because he believed it would be ineffective. "[M]ere disagreement as to the proper medical treatment" is insufficient to demonstrate an adequacy of care claim. Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); see also Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) (explaining that deliberate indifference requires something "more than negligence").

Likewise, after surgery, McCloskey refused nearly all care during his twelve-day stay in the infirmary. At discharge, DuShuttle ordered an antibiotic and an opioid for pain; he also ordered that McCloskey's arm be kept in a sling. The record indicates that McCloskey refused care to the site of surgery; refused dressings, antibiotics, and pain medication; and generally refused to wear the sling. Moreover, DuShuttle's notes from an August 29, 2013 examination indicate that the only post-operative complication was weakness, which he

---

[9] The District Court erroneously stated that McCloskey was directed "to remain on pain medications and to keep his arm in a sling" on July 1, 2013, 2018 WL 1640592, at *2; that order was given post-surgery. Nevertheless, we note that Dr. DuShuttle, the orthopedic expert, did not prescribe a sling or pain medications prior to the surgery.

6

explained McCloskey was always going to have in his arm because of previous nerve damage. DuShuttle noted no persistent pain and no medications were indicated; nor was there any physical therapy prescribed.[10] Based on the record, no reasonable jury could find that Desrosiers acted with deliberate indifference to McCloskey's medical needs.

Next, we agree with the District Court that summary judgment was warranted on McCloskey's claims against Welch. There is no evidence in the record that Welch had any responsibilities other than administrative oversight of inmates' medical care. A § 1983 action cannot be premised on a theory of respondeat superior. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Welch's sole involvement appears to be in reviewing McCloskey's administrative complaints related to this suit. Merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim. See id. at 1208. And although "[a] high-ranking prison official can expose an inmate to danger by failing to correct serious known deficiencies in the provision of medical care to the inmate population," Barkes v. First Corr. Med., Inc., 766 F.3d 307, 324 (3d Cir. 2014), rev'd per curiam on other grounds sub nom. Taylor v. Barkes, 135 S. Ct. 2042 (2015), McCloskey failed to

---

[10] Desrosiers's progress notes on September 5, 2013, indicate that McCloskey's shoulder was well healed and that he was already exercising, including doing push-ups. He reported experiencing pain mostly at night but that he was otherwise fine. Desrosiers cautioned against over-exercising. As the District Court noted, in response to McCloskey's sick call requests thereafter alleging continued pain at night and weakness in his arm and wrist, he was evaluated by the provider and advised to take Motrin (which he refused to take, complaining it was ineffective) and continue light exercise; he has also since been moved to a bottom bunk and provided a wrist brace.

7

identify a supervisory policy, practice, or custom which directly caused him constitutional harm.

Finally, we agree with the District Court that because McCloskey failed to demonstrate that he suffered a violation of his constitutional rights, CCS cannot be liable under a theory of municipal liability. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Moreover, McCloskey's "vague assertions" that the medical provider had a policy of providing inadequate medical care, without more, are inadequate to state a claim for relief under Monell v. Department of Social Services, 436 U.S. 658 (1978). See Groman, 47 F.3d at 637.

Based on the foregoing, we will summarily affirm the District Court's judgment.