The Third Circuit applies a three-part test to determine whether the deliberate indifference requirement has been met:
*505 it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.
Id. (citing Walker v. City of New York, 974 F.2d 293, 297-298 (2d Cir. 1992) ).
In other words, to state a claim, plaintiff must show that the municipality's "failure to provide specific training...has a causal nexus with [the plaintiff's] injuries" and "that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1030 (3d Cir. 1991) ). Plaintiff must also show "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997) (quoting Freedman v. City of Allentown, 853 F.2d 1111, 1117 (3d Cir. 1988) ).
1. Lancaster County and Warden Dennis Molyneaux
Plaintiffs assert several § 1983 Monell claims against Lancaster County and LCP Warden Dennis Molyneaux based on his failure to properly train subordinates and his failure to adopt necessary policies at LCP.[2] Dkt. 64, Pls.' Resp. p 15. Specifically, Plaintiffs contend that Lancaster County and Warden Molyneaux (1) failed to train correctional offers in detox watch and suicide risk, (2) failed to train correctional officers on how to monitor an inmate using the restroom, (3) failed to train correctional officers and PrimeCare employees on the proper way to fill out intake forms, (4) failed to enact policies requiring inmates withdrawing from opiates be placed on suicide watch, and (5) failed to enact policies regarding clothes hooks and locking doors accessible to inmates. Dkt. 64, Pls.' Resp. p.15-17.
In their motion, Defendants contend that Plaintiffs have not established their failure to train claims because "both Lancaster County and PrimeCare Medical had adequate and comprehensive policies in place for the identification and treatment of inmates who were deemed to be at risk of committing suicide." Dkt. 54, Defs. Mem. of Law p. 17. Defendants further aver that all LCP inmates are screened multiple times for suicidality and mental health problems and that PrimeCare Medical staff conducted thousands of sessions with inmates. Dkt. 54, Defs. Mem. of Law p. 17-18. Defendants further contend that LCP had adequate suicide prevention policies, practices, and training in place because LCP was continually accredited by the National Commission on Correctional Health Care and the Pennsylvania Department of Corrections. Dkt. 54, Defs. Mem. of Law p. 19.
Lancaster County and Warden Molyneaux are entitled to summary judgment on the § 1983 Monell claims against them *506 in Count II of the Amended Complaint because Plaintiffs have failed to establish that Lancaster County or Warden Molyneaux had actual or constructive knowledge, and acquiesced in the alleged violations of suicide screening and monitoring procedures or failed to enact needed policies.
a. Failure to Train
With respect to the failure to train correctional officers in detox watch and suicide risk and the failure to train correctional officers and PrimeCare employees on the proper way to fill out intake forms claims, Plaintiffs may have pointed to sufficient evidence that a few members of the LCP staff did not know of certain suicide screening procedures or failed to properly administer those screenings. However, individual violations of LCP procedures do not constitute "policy" and may only constitute "custom" when such procedures are violated with such widespread frequency that policy making officials, such as Warden Molyneaux, have either actual or constructive notice, and acquiesced in the "custom." Berg v. Cpunty of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).
Plaintiffs contend that Warden Molyneaux "has final decision-making authority over the enactment and implementation of all policies and procedures at LCP." Dkt. 64, Pls.' Resp., p. 15. However, even assuming that Warden Molyneaux was the final policy making official, Plaintiffs have not presented evidence that he had knowledge of the alleged breaches of the suicide screening and monitoring procedures either in the case of Kanney or at any point prior to Kanney's suicide. Nor have Plaintiffs presented sufficient evidence that Lancaster County's policy making officials had constructive notice of the alleged breaches.
Plaintiffs have not cited to any evidence regarding how many suicide screening forms were improperly filled out or how many inmates previously locked themselves in restrooms for a lengthy period. While Plaintiffs have produced some evidence concerning the overall number of suicides that occurred at LCP between 1998 and Kanney's suicide, a close examination of the documents reveals that the circumstances surrounding these suicides vary greatly. Dkt. 63, Ex. KK; Dkt. 63, Ex. U. Of the seven Mortality Reviews provided by Plaintiff, none involve a situation where an inmate committed suicide in a locked restroom and two involve a situation where an inmate jumped to his death. Dkt. 63, Ex. KK.
Two of the records produced by Plaintiff require more thorough explanation and review. The Mortality Review of a 2011 suicide reveals that two medical providers, who were not involved with Kanney's screening, failed to properly and consistently fill out his suicide screening forms. Dkt. 63, Ex. KK. This 2011 Mortality Review recommended that the intake screening procedures be reviewed and that medical personnel review the screening forms completed by officers. Dkt. 63, Ex. KK. Following this isolated incident, over eighteen months passed without a suicide. The Mortality Review of a 2013 suicide, the last before Kanney's, reveals that the intake screenings were conducted in public and that the Mental Health Assessment and Mental Status Exam were not conducted at the appropriate time by Bonnie Bair, a defendant in this action. Dkt. 63, Ex. KK. The 2013 Mortality Review recommended that intakes be conducted in a private area and that mental health staff review how to conduct mental health assessments. Dkt. 63, Ex. KK. Nearly one year lapsed between the 2013 suicide and Kanney's suicide in April 2014.
The Court finds that although Plaintiffs have produced evidence of two prior instances *507 where suicide screening processes may have been improperly followed, this evidence is insufficient to demonstrate that there was a pattern or custom of individuals improperly filling out the paperwork because of the temporal isolation of the incidents. The Court specifically notes that following both of these suicides, recommendations were made for corrective action, and LCP operated without incident for months. The 2011 suicide occurred prior to Warden Molyneaux's tenure as Warden and involved medical personnel not involved in the instant action. Plaintiffs have not presented evidence that Warden Molyneaux had knowledge of the alleged breaches by the medical personnel involved in the 2011 suicide. Plaintiffs have also not presented evidence that the medical personnel involved in the 2011 suicide made repeated errors when completing the suicide screening forms or that Lancaster County was aware of any repeated errors. While the 2013 suicide occurred during Warden Molyneaux's tenure as Warden, the screening issue in that case concerned the time and manner in which the mental health screening forms were completed, not inconsistencies with the answers given on the forms. The 2013 Mortality Review recommended that "burst" training in suicide prevention be given to staff, that more privacy be afforded during the intake screening, and that mental health personnel review the proper way to conduct assessments. Dkt. 63, Ex. KK. Plaintiffs have not produced any evidence to suggest that these corrective actions were not undertaken by Lancaster County.
Further, Plaintiffs have not produced a record of the frequency of alleged breaches sufficient to show that Warden Molyneaux or Lancaster County had actual or constructive knowledge, and acquiesced in the alleged violations of suicide screening and monitoring procedures. Two isolated incidents do not constitute a pattern, policy, or custom of failing to properly train LCP personnel. Moreover, "a municipality's deliberately indifferent failure to train is not established by [ ] presenting evidence of the shortcomings of an individual." Simmons v. City of Philadelphia, 947 F.2d 1042, 1060 (3d Cir. 1991) (citing City of Canton, 109 S.Ct. at 1206 ). "It is well-settled that an employee's deviation from existing policy cannot, without more, establish the requisite causal link between the alleged constitutional harm and the municipality-only when a governmental policy itself effects an injury may a municipality be held to account under Section 1983." Nealman v. Laughlin, 2016 WL 4539203, *11, 2016 U.S. Dist. LEXIS 116881, *34-35 (M.D.Pa. Aug. 31, 2016) (emphasis in original) (citing Monell, 436 U.S. at 691, 98 S.Ct. 2018 ). Here, at best Plaintiffs may have provided evidence that a few LCP staff did not follow applicable procedures, but Plaintiffs have failed to establish that policymakers knew of or acquiesced in their behavior and made a deliberate decision not to provide training. To the contrary, the evidence suggests that LCP engaged in a process of policy evaluation and corrective action, contacted an outside consultant to evaluate LCP procedures, and provided suicide training to all staff. Dkt.58, Ex. N, Hayes Rpt.; Dkt. 58, Ex. GG; Dkt. 58, Ex. B, Phillips Dep. p. 12-14; Dkt. 58, Ex. C, Maldonado Dep. p. 27-28; Dkt. 55, Ex. L. The Court further notes that the Suicide Prevention Program was revised numerous times, including in September 2012. Dkt. 55, Ex. L.
Plaintiffs also contend that Lancaster County and Warden Molyneaux failed to train correctional officers on the monitoring of inmates using the restroom. The Court finds that Plaintiffs have not demonstrated that the "risk reduction associated with training is so great that failure of those responsible for the content of the training program to provide it can *508 reasonably be attributed to a deliberate indifference." Woloszyn, 396 F.3d at 325 (citing Colburn II, 946 F.2d at 1029-30. Plaintiffs have failed to produce any evidence that such training would greatly reduce the risk of suicide. Plaintiffs have not produced any evidence to suggest that it is common practice for inmates to lock themselves in restrooms at LCP or that it is common for suicidal inmates, generally, to lock themselves in restrooms for extended periods of time. A close review of the record reveals no evidence that LCP had a training issue with respect to inmate use of the restrooms.
b. Policy/Custom
Plaintiffs also contend that Lancaster County and Warden Molyneaux failed to enact policies requiring inmates withdrawing from opiates to be placed on suicide watch and failed to enact policies regarding clothing hooks and locking doors accessible to inmates. Plaintiffs do not attempt to hold Lancaster County and Warden Molyneaux liable based on policies that existed, rather their contentions are based on the absence of purportedly necessary policies. Both the Supreme Court and the Third Circuit have recognized that for purposes of Section 1983 Monell liability, a policy may exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003) (citing Bd. of the County Comm'rs of Bryan County, Oklahoma, 520 U.S. at 417-18, 117 S.Ct. 1382 ).
With respect to the failure to enact policies requiring inmates withdrawing from opiates to be placed on suicide watch claim, the Court finds that Plaintiffs have not established that Lancaster County or Warden Molyneaux were deliberately indifferent to the need for such policy. As previously noted, the Third Circuit has "clearly and repeatedly held that the increased risk of suicide due to intoxication or drug withdrawal cannot support a deliberate indifference claim." Ferencz, 2014 WL 3339639, *4, 2014 U.S. Dist. LEXIS 92173, *12 (E.D.Pa. July 8, 2014) (citing Woloszyn, 396 F.3d 314, 322-23 (3d Cir. 2005) and Colburn II, 946 F.2d at 1026-27 ). Thus, because an increased risk of suicide due to intoxication or drug withdrawal is insufficient to support a deliberate indifference claim, it naturally follows that a policymaker cannot be deliberately indifferent for failing to implement a policy requiring inmates going through drug withdrawal to automatically be placed on suicide watch.
With respect to Plaintiffs' claim for the failure to enact policies regarding clothing hooks and locking doors accessible to inmates, the court finds that Plaintiffs have not established that the need for Lancaster County and Warden Molyneaux to affirmatively act was so obvious in light of the inadequacy of existing practices. See Natale, 318 F.3d at 584. Plaintiffs have failed to produce any evidence that other inmates at LCP have previously locked themselves in restrooms or committed suicide by hanging themselves from a clothing hook in a restroom. While the evidence produced by Plaintiffs does establish that the manner of death in some of the prior suicides at LCP was hanging, those inmates hung themselves in their cells. Dkt. 63, Ex. KK. Plaintiffs have produced no evidence that any prior suicide at LCP occurred when an inmate hung himself from a clothing hook located in a restroom or in any other area of the facility. Said *509 another way, Plaintiffs have produced no evidence to show that Lancaster County or Warden Molyneaux were on notice that permitting an inmate who repeatedly denied suicidal ideation to use a locking restroom in the medical unit would likely result in that inmate committing suicide by hanging himself from a clothing hook located in that restroom.
Accordingly, Lancaster County and Warden Molyneaux are entitled to summary judgment on the § 1983 Monell claims against them in Count II of the Amended Complaint because Plaintiffs have failed to produce evidence sufficient to establish prima facie that Lancaster County or Warden Molyneaux had actual or constructive knowledge, and acquiesced in any alleged violations of suicide screening and monitoring procedures or that he failed to enact needed policies.
2. PrimeCare
Plaintiffs assert failure to train and policy or custom Monell claims against PrimeCare at paragraphs 65, 66, 67 and 71 of the Amended Complaint. Plaintiffs specifically claim that PrimeCare: (1) has a policy, custom or practice of failing to provide adequate policies and procedures for identifying and treating persons who are high suicide risks in an effort to save money (Dkt. 21 Am. Compl., ¶ 65-66); (2) has a policy, practice or custom of failing to adequately train medical staff regarding warning signs of potential suicides, and failing to discipline employees who allow suicides to occur on their watch (Id., ¶ 67); and (3) recognized and accepted a policy consisting of an inadequate system of review of claims of inadequate medical care, prior suicides and complaints of doors that lock. (Id., ¶ 71). In Plaintiffs' response to PrimeCare's Motion for Summary Judgment, Plaintiffs modify their initial Monell claims to the following: (1) failure to have a policy requiring qualified persons to conduct Intake Suicide Screening (Dkt. 77, Pls.' Mem. Law, p. 13); (2) failure to train its employees who performed Intakes or reviewed Intakes on the proper way to answer the questions, suicide risk factors, and withdrawal from drugs/alcohol (Id. at 14-15); and (3) failure to enact a policy requiring that inmates who were withdrawing from opiates should be placed on suicide watch when the need for such a policy was obvious (Id. at 16-17.).
"A private corporation contracted by a prison to provide health care for inmates cannot be held liable on a respondeat superior theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." Henry v. Buskirk, 2011 U.S. Dist. LEXIS 18644 (E.D.Pa. 2011) (citing Natale, 318 F.3d at 583-84 and Monell, 436 U.S.at 691-94, 98 S.Ct. 2018 ).
a. Failure to Train
Plaintiffs claim that PrimeCare failed to adequately train employees performing or reviewing intakes on the proper way to answer questions, the warning signs or risk factors of suicide and withdrawal from drugs and alcohol, and failed to discipline employees who "allow suicides to occur on their watch." Dkt. 21 Am. Compl., ¶ 67. Plaintiffs argue that the National Commission on Correctional Health Care ("NCCHC") guidelines require that intake suicide screening must be conducted by a qualified mental health professional, citing Barkes v. First Corr. Med., Inc., 766 F.3d 307 (3d Cir. 2014). PrimeCare notes that the alleged qualified mental health professional requirement is, in fact, not mandated but is merely an allegation by the Barkes plaintiffs in that case. Plaintiffs cannot point to any record evidence supporting the tenet that a qualified mental health professional must conduct intake suicide screening. In fact, the Supreme *510 Court stated in dicta in Taylor v Barkes that "[n]o decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols." --- U.S. ----, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015). The Court went on to explain that neither Colburn I nor Colburn II clearly established such a right. Id. at 2045.
Medical Assistant Candelario administered the Intake Suicide Screening even though she admitted that she did not know any of the signs for suicide risk. Dkt. 75, Ex. Y, Candelario Dep., pp. 8, 9, 10, 11, 14. Plaintiffs may have pointed to sufficient evidence that Ms. Candelario failed to properly administer the screening intake forms and that Ms. Neimer and Ms. Bair did not properly review those forms. However, individual violations of PrimeCare procedures do not constitute "policy" and may only constitute "custom" when such procedures are violated with such widespread frequency that policy making officials have either actual or constructive notice and acquiesced in the "custom." Berg, 219 F.3d at 276.
Plaintiffs have not cited to any evidence regarding how many suicide screening forms were improperly filled out or how many inmates previously locked themselves in restrooms for a lengthy period. Moreover, as previously stated, while Plaintiffs have produced some evidence concerning the overall number of suicides that occurred at LCP between 1998 and Kanney's suicide, a close examination of the documents reveals that the circumstances surrounding these suicides vary greatly. Dkt. 63, Ex. KK; Dkt. 63, Ex. U. Of the seven Mortality Reviews provided by Plaintiff, none involve a situation where an inmate committed suicide in a locked restroom and two involve a situation where an inmate jumped to his death. Dkt. 63, Ex. KK.
Two of the records produced by Plaintiff require more thorough explanation and review. The Mortality Review of Mr. Snyder's 2011 suicide reveals that two medical providers, who were not involved with Kanney's screening, failed to properly and consistently fill out his suicide screening forms. Dkt. 63, Ex. KK. This 2011 Mortality Review recommended that the intake screening procedures be reviewed and that medical personnel review the screening forms completed by officers. Dkt. 63, Ex. KK. Following this isolated incident, over eighteen months passed without a suicide. The Mortality Review of Mr. Wisniewski's 2013 suicide, the last before Kanney's, reveals that the intake screenings were conducted in public and that the Mental Health Assessment and Mental Status Exam were not conducted at the appropriate time by Bonnie Bair, a defendant in this action. Dkt. 63, Ex. KK. The 2013 Mortality Review recommended that intakes be conducted in a private area and that mental health staff review how to conduct mental health assessments. Dkt. 63, Ex. KK. Nearly one year lapsed between the 2013 suicide and Kanney's suicide in April 2014.
The Court finds that although Plaintiffs have produced evidence of two prior instances where suicide screening processes may have been improperly followed, this evidence is insufficient to demonstrate that there was a pattern or custom of individuals improperly filling out the paperwork because of the temporal isolation of the incidents. The Court specifically notes that following both of these suicides, recommendations were made for corrective action, and LCP operated without incident for months. The 2011 suicide involved medical personnel not involved in the instant action. Plaintiffs have not presented evidence *511 that the medical personnel involved in the 2011 suicide made repeated errors when completing the suicide screening forms. The screening issue in the 2013 suicide concerned the time and manner in which the mental health screening forms were completed, but not inconsistencies with the answers given on the forms. The 2013 Mortality Review recommended that "burst" training in suicide prevention be given to staff, that more privacy be afforded during the intake screening, and that mental health personnel review the proper way to conduct assessments. Dkt. 63, Ex. KK. Plaintiffs have not produced any evidence to suggest that these corrective actions were not undertaken by either Lancaster County or PrimeCare.
Two isolated incidents do not constitute a pattern, policy, or custom of failing to properly train PrimeCare personnel. Moreover, "a municipality's deliberately indifferent failure to train is not established by [ ] presenting evidence of the shortcomings of an individual." Simmons, 947 F.2d at 1060 (citing City of Canton, 109 S.Ct. at 1206 ). "It is well-settled that an employee's deviation from existing policy cannot, without more, establish the requisite causal link between the alleged constitutional harm and the municipality-only when a governmental policy itself effects an injury may a municipality be held to account under Section 1983." Nealman, 2016 WL 4539203, *11, 2016 U.S. Dist. LEXIS 116881, *34-35 (emphasis in original) (citing Monell, 436 U.S. at 691, 98 S.Ct. 2018 ). Here, at best Plaintiffs may have provided evidence that a few PrimeCare staff did not follow applicable procedures, but Plaintiffs have failed to establish that policymakers knew of or acquiesced in their behavior and made a deliberate decision not to provide training. To the contrary, the evidence suggests that LCP and PrimeCare engaged in a process of policy evaluation and corrective action, contacted an outside consultant to evaluate procedures, and provided suicide training to all staff. Dkt.58, Ex. N, Hayes Rpt.; Dkt. 58, Ex. GG; Dkt. 58, Ex. B, Phillips Dep. p. 12-14; Dkt. 58, Ex. C, Maldonado Dep. p. 27-28; Dkt. 55, Ex. L. The Court further notes that the Suicide Prevention Program was revised numerous times, including in September 2012. Dkt. 55, Ex. L.
b. Policy/Custom
With respect to Plaintiffs' claim that PrimeCare failed to provide adequate policies and procedures for identifying and treating persons who are high suicide risks in an effort to save money, PrimeCare argues that its suicide prevention policy was consistent with current best practices and accepted standards of correctional care pursuant to the National Commission on Correctional Health Care ("NCCHC"), as noted by PrimeCare's expert, Thomas W. White, Ph.D. Further, PrimeCare contends that "the treatment protocol set forth in the PrimeCare suicide prevention policy did not apply to Kanney because he was assessed as non-suicidal based upon his statements of non-suicidality and non-suicidal behavior." Dkt. 51, PrimeCare Br., p. 17. PrimeCare also argues that there is no evidence that, in an effort to save money, PrimeCare implemented policies that would inhibit a medical professional from treating an inmate that was a high risk for suicide.
This Monell theory is baseless considering it would subject both PrimeCare and Lancaster County to significant future litigation and cost them both much more money than any such policy would save them. In addition, Plaintiffs do not respond to this argument in their brief. Accordingly, summary judgment is granted to PrimeCare on this Monell claim. See Morello, 142 F.Supp.3d at 381 n.3 (considering claim abandoned where not addressed in opposition brief and granting summary *512 judgment); Cicchiello, 726 F.Supp.2d at 531 (finding failure to address claim in brief in opposition to motion for summary judgment constitutes abandonment of claim); Aubrecht, 2009 WL 793634, at *, 2009 U.S. Dist. LEXIS 32558, at *28 (granting summary judgment as to plaintiff's claim not addressed in plaintiff's brief in opposition); Clarity Software, LLC, 2006 U.S. Dist. LEXIS 56217, at *34 (granting summary judgment against plaintiff for failure to address viability of claim in brief in opposition to motion for summary judgment).
With respect to Plaintiffs' claim for failure to enact policies requiring inmates withdrawing from opiates to be placed on suicide watch, Plaintiffs have not established that PrimeCare, like Lancaster County and Warden Molyneaux, was deliberately indifferent to the need for such policy. As previously noted, the Third Circuit has "clearly and repeatedly held that the increased risk of suicide due to intoxication or drug withdrawal cannot support a deliberate indifference claim." Ferencz, 2014 WL 3339639, *4, 2014 U.S. Dist. LEXIS 92173, *12 (citing Woloszyn, 396 F.3d at 322-23 and Colburn II, 946 F.2d at 1026-27 ). Thus, because an increased risk of suicide due to intoxication or drug withdrawal is insufficient to support a deliberate indifference claim, it follows that a policymaker cannot be deliberately indifferent for failing to implement a policy requiring inmates going through drug withdrawal to automatically be placed on suicide watch.
With respect to Plaintiffs' claim that PrimeCare had a policy of an inadequate system of review of claims of inadequate medical care, prior suicides and complaints of doors that lock, PrimeCare notes that, following an inmate's suicide, both a comprehensive clinical review and, as required by the National Committee on Correctional Health Care (NCCHC"), a clinical mortality review is conducted. A clinical mortality review is "an assessment of the clinical care provided and the circumstances leading up to a death. Its purpose is to identify any areas of patient care or the system's policies and procedures that can be improved." Dkt. 51, PrimeCare Br., p. 20 (quoting Ex. U). PrimeCare also notes that it developed educational handouts for every inmate regarding how to access mental health care services and instructions on a course of action and who to contact if they felt bad or if they knew of another inmate who was going to hurt himself. Dkt. 51, Ex. V, pp. 41-42. PrimeCare also consulted with Lindsay Hayes, an expert on suicide prevention, to evaluate and make recommendations for the improvement of its policies and procedures regarding suicide prevention. Id. at 42-43, 44. Plaintiffs do not respond to this argument in their brief.
Accordingly, summary judgment is granted to PrimeCare on this Monell claim. See Morello, 142 F.Supp.3d at 381 n.3 (considering claim abandoned where not addressed in opposition brief and granting summary judgment); Cicchiello, 726 F.Supp.2d at 531 (finding failure to address claim in brief in opposition to motion for summary judgment constitutes abandonment of claim); Aubrecht, 2009 WL 793634, at *, 2009 U.S. Dist. LEXIS 32558, at *28 (granting summary judgment as to plaintiff's claim not addressed in plaintiff's brief in opposition); Clarity Software, LLC, 2006 U.S. Dist. LEXIS 56217, at *34 (granting summary judgment against plaintiff for failure to address viability of claim in brief in opposition to motion for summary judgment).
C. Qualified Immunity
Qualified immunity shields government officials performing discretionary functions from liability for civil *513 damages unless their conduct violates clearly established statutory or constitutional rights known to a reasonable person. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It is the defendants' burden to establish that they are entitled to such immunity. See Stoneking v. Bradford Area School District, 882 F.2d 720, 726 (3d Cir. 1989).
Courts apply a two-step inquiry to determine whether a defendant is entitled to qualified immunity. First, a court must determine whether a constitutional right was violated. Second, a court must determine whether the right was clearly established such that a reasonable officer would have known the conduct violated their rights. Saucier v. Katz, 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court found a court may address whether a right was clearly established before addressing whether a constitutional right was violated. "Under the test announced in Harlow, reasonableness is measured by an objective standard; arguments that the defendants desired to handle or subjectively believed they had handled the incidents properly are irrelevant." Stoneking, 882 F.2d at 726 (citing Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ).
Because this Court finds that Defendants Miller, Phillips, Maldonado and Molyneaux are entitled to summary judgment on Plaintiffs' § 1983 claims in Counts I and II of the Amended Complaint, this Court need not address Defendants' qualified immunity arguments.
D. State Law Claims: Count IV-Wrongful Death and Count V-Pennsylvania Survival Act
Plaintiffs assert both wrongful death and survival actions against Defendants Lancaster County, Warden Molyneaux, Sergeant Maldonado, Officer Miller, and Officer Phillips. Plaintiffs argue that their wrongful death and survival actions are based on both § 1983 and Pennsylvania state law. Dkt. 21, Am. Compl. ¶¶ 75-78. Defendants Lancaster County, Warden Molyneaux, and Sergeant Maldonado aver that Plaintiff's state law survival and wrongful death claims are barred by the express provisions of the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. §§ 8541, et seq. Plaintiffs aver that their wrongful death and survival claims are not barred by the PSTCA because those claims arise out of the § 1983 claim for violation of Kanney's Fourteenth Amendment rights. Dkt. 64, Pls.' Resp. p. 17. Specifically, Plaintiffs contend that they "seek to vindicate [Kanney's] § 1983 claims by way of Pennsylvania's wrongful death and survival statutes." Dkt. 64, Pls.' Resp. p. 17 (citing Moyer v. Berks Heim Nursing Home, 2014 WL 1096043, *2-3, 2014 U.S. Dist. LEXIS 36600, *6-7 (March 20, 2014).
Because this Court has granted summary judgment on all of Plaintiffs' § 1983 claims against Defendants Lancaster County, Warden Molyneaux, Sergeant Maldonado, Officer Phillips, and Officer Miller, any wrongful death or survival action claims based on alleged violations of § 1983 against those Defendants fail as a matter of law. Accordingly, to the extent Plaintiffs' wrongful death and survival action claims in Counts IV and V of the Amended Complaint are based on § 1983 violations, Defendants Lancaster County, Warden Molyneaux, Sergeant Maldonado, Officer Miller, and Officer Phillips are entitled to summary judgment on those claims.
As previously noted, Plaintiffs' also assert wrongful death and survival actions based on Pennsylvania state law against Defendants Lancaster County, Warden *514 Molyneaux, Sergeant Maldonado, Officer Miller, and Officer Phillips. Dkt. 21, Am. Compl. ¶¶ 75-78. The general provision with respect to governmental immunity dictates that:
Except as otherwise provided in this subchapter, no local agency shall be liable for any damage on account of any injury to a person or property caused by any act of the local agency or any employee thereof or any other person.
42 Pa. C.S.A. § 8541. In order for a claim to be maintained against a local agency, two conditions must first be met. First, the damages sought in the present suit must be recoverable under the common law, or a statute creating a cause of action absent the defenses provided in the act; and second, that Plaintiff's injury "was caused by the negligent acts of the local agency or employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (d)." 42 Pa. C.S.A. § 8542(a).
Section 8542(b) provides that a local governmental agency is immune from any suit based upon the negligent acts of the agency or employee, unless the cause of action relates to one of eight categories. The eight enumerated exceptions to immunity are: (1) vehicle liability; (2) the care, custody or control of personal property; (3) the care, custody or control of real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; or (8) the care, custody or control of animals. 42 Pa. C.S.A. § 8542(b). These exceptions are to be narrowly construed. See Mascaro v. Youth Study Ctr., 514 Pa. 351, 523 A.2d 1118, 1123 (1987). Defendants Lancaster County, Warden Molyneaux, and Sergeant Maldonado contend that none of the exceptions apply in the present case and that Plaintiffs' claims against Lancaster County are barred. Dkt. 54, p. 17-18. Moreover, Defendants contend that because "the liability of local agency employees cannot exceed the liability of their employing agency," then Warden Molyneaux and Sergeant Maldonado also cannot be liable. See 42 Pa. C.S.A. § 8545.
Because none of narrowly construed exceptions to the PTSCA apply in this case, Plaintiffs' wrongful death and survival actions based on Pennsylvania state law are barred against Lancaster County, Warden Molyneaux, and Sergeant Maldonado. Although Officers Miller and Phillips did not move for summary judgment of these Pennsylvania wrongful death and survival actions, perhaps because they argued that they are qualifiedly immune from suit in this case, the claims against both Officer Miller and Officer Phillips are also barred by the PSTCA because they were also Lancaster County employees. Dkt. 54, p. 9 n.1. Thus, Defendants Lancaster County, Warden Molyneaux, Sergeant Maldonado, Officer Miller, and Officer Phillips are entitled to summary judgment on Plaintiffs' Pennsylvania state law wrongful death and survival action claims in Counts IV and V of the Amended Complaint.
E. Punitive Damages
Plaintiffs also claim punitive damages against all Defendants and the PrimeCare Defendants move for summary judgment on this damages claim. Punitive damages in § 1983 cases are available when an individual defendant has acted with a "reckless or callous disregard of, or indifference to, the rights and safety of others." Keohane, 2010 WL 3221861, *18, 2010 U.S. Dist. LEXIS 85714, *51-52 (quoting Keenan v. City of Phila., 983 F.2d 459 (3d Cir. 1992) ). "Whether conduct rises to that level is for the jury to decide." Id. (citing Woolfolk v. Duncan, 872 F.Supp. 1381, 1392 (E.D. Pa. 1995) ). Because a reasonable jury could find that the conduct *515 of the remaining PrimeCare Defendants rose to the level of "reckless," the claim for punitive damages survives against PrimeCare, Jaycees Candelario, Katie Neimer and Bonnie Bair.
IV. CONCLUSION
For the foregoing reasons, Summary Judgment is GRANTED as to Plaintiffs':
• § 1983 Deliberate Indifference claims in Count I of the Amended Complaint against Defendants Sergeant John Maldonado, William Miller, Tyler Phillips, Kristin Zablocki, Nicole Smith, Erica Abernathy, Susan Taylor, Stephanie Meyer, Toby Catone and Jade Fritsch;
• § 1983 Monell claims in Count II of the Amended Complaint against Lancaster County and Warden Dennis Molyneaux;
• § 1983 Monell claims in Count II of the Amended Complaint against PrimeCare;
• § 1983 and Pennsylvania state law wrongful death claims in Count IV of the Amended Complaint against Lancaster County, Warden Dennis Molyneaux, Sergeant Maldonado, William Miller, and Tyler Phillips; and
• § 1983 and Pennsylvania state law survival actions in Count V of the Amended Complaint against Lancaster County, Warden Dennis Molyneaux, Sergeant Maldonado, William Miller, and Tyler Phillips.
Summary Judgment is DENIED as to Plaintiffs':
• § 1983 Deliberate Indifference claims in Count I of the Amended Complaint against Defendants PrimeCare, Jaycees Candelario, Katie Neimer and Bonnie Bair; and
• Punitive Damages claim against PrimeCare, Jaycees Candelario, Katie Neimer and Bonnie Bair.
The remaining claims in this case are the § 1983 Deliberate Indifference claims in the Amended Complaint (Count I) and punitive damages against Defendants PrimeCare, Jaycees Candelario, Katie Neimer and Bonnie Bair and the State Law Claims for negligence (Count III), wrongful death (Count IV) and survival (Count V) against Defendants PrimeCare, Jaycees Candelario, Katie Neimer, Bonnie Bair, Kristin Zablocki, Nicole Smith, Erica Abernathy, Susan Taylor, Stephanie Meyer, Toby Catone and Jade Fritsch.
An appropriate Order follows.

Although Plaintiffs devote much of their response to articulating a § 1983 deliberate indifference claim against Warden Molyneaux, such argument is misplaced because Plaintiffs failed to include a § 1983 deliberate indifference claim against Warden Molyneaux in their Amended Complaint. See Dkt. 21, Am. Compl. Count I. Aside from the state law claims, the only claim raised against Warden Molyneaux in the Amended Complaint is a § 1983Monell claim based on alleged unconstitutional customs and policies. See Am. Compl. Count II.